**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11 CR 62 |
| ) | |
| REDELL DAVIS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

A one-count indictment charged Defendant Redell Davis with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Mr. Davis now seeks to quash his arrest and suppress all evidence recovered during the search of a vehicle in which he was a passenger as fruits of his allegedly illegal arrest (R. 68, Mot. to Quash), and to suppress statements he claims officers elicited in violation of Fifth Amendment (R. 69, Mot. to Sup). For the following reasons, the Court denies Mr. Davis' motions.

**BACKGROUND**

On April 2, 2013, the Court conducted a hearing on Defendants' motion to quash and motion to suppress. During the hearing, Chicago Police Department Officers Ricky Rivera and Sean Lewis testified. The Court carefully evaluated the demeanor and credibility of both witnesses, including their body language, tone of voice, facial expressions, mannerisms, and other indicative factors. In addition, the Court admitted the following exhibits: Government Exhibit Map, Government Exhibit Citation, and Defendant's Exhibit No. 1 – Disposition of Reginald Finley's traffic case. Defendant Davies did not offer any witnesses at the hearing or

1

affidavits in support of his motion. Rather, he relied exclusively on his cross-examination of the two officers who testified. The Court summarizes below the testimony of the witnesses.

On August 12, 2010, at approximately 9:30 p.m., Chicago Police Officers Ricky Rivera and Sean Lewis were on patrol in the 10th district when they observed a four door Buick, dark in color, driving west on West 16th Street. They both testified that they saw the Buick while they waited at a red light at the intersection of 16th Street and Keeler. Their police car was the first car waiting at the stoplight facing south. They did not observe the Buick speeding, and it did not go through a red light. Officer Rivera and Officer Lewis both testified that they looked into the Buick as it drove through the intersection and observed that neither the driver nor the passenger had their seatbelts fastened. They now know that Reginald Finley was the Buick's driver and Defendant Davis was the passenger in the vehicle. Both officers explained that they could see into the Buick because there are two streetlights at the intersection of 16th Street and Keeler. Additionally, when the Buick drove through the intersection, it passed by the headlights of their police vehicle. Officer Rivera testified that Mr. Finley and Defendant Davis were approximately twenty-five feet away as they drove through the intersection.

According to the officers, after they noticed that neither Mr. Finley nor Mr. Davis had their seatbelts fastened, in violation of Illinois law, they turned on the police car's emergency lights and followed the Buick on 16th street, attempting to pull it over. Officer Lewis drove the police car. Officer Rivera testified that they drove approximately two to three car lengths behind the Buick. He testified that, while driving along 16th Street, he again observed that neither Mr. Finley nor Defendant Davis had their seatbelts fastened. Mr. Finley did not immediately pull the Buick over, but instead made a right turn onto Tripp Avenue. He eventually pulled his car over

2

at 1550 S. Tripp Avenue, on the west side of the road. Officer Lewis pulled the police vehicle into the middle of the road, less than a car length behind the Buick.

The officers exited their vehicle and approached the Buick. According to Officer Rivera, he got out first and approached the passenger's side of the car, and Officer Lewis approached the driver's side. At the hearing, Officer Lewis testified consistently with Officer Rivera on this point. He acknowledged, however, that in a report he wrote after the incident he made an error and stated that Officer Rivera had approached the driver's side. Officer Lewis testified that, at some point, Mr. Finley exited the driver's side and he placed Mr. Finley in handcuffs. The officers gave Mr. Finley a citation for failure to wear his seatbelt, although Officer Rivera testified that Officer Lewis did not write the ticket until approximately an hour after the incident. (*See* Government Exhibit Citation). The citation noted the location of the occurrence as 4216 West 16th Street, an address between Keeler and Tripp on 16th Street. (*Id.*)

According to Officer Rivera, as he approached the Buick, Mr. Davis appeared nervous and repeatedly turned back to look at the officers. He had observed Mr. Davis repeatedly turn around while driving down 16th Street as well. As Officer Rivera approached the Buick, he observed Mr. Davis crouch and place a metal object on the floorboard of the vehicle. Officer Lewis did not observe Mr. Davis with a metal object. Officer Rivera testified that Officer Lewis wrote a report indicating that Mr. Davis had thrown gun onto the floorboard. He said that he did not review Officer Lewis' report that night, but reviewed it later. Officer Rivera explained that the report was not entirely accurate because he saw Mr. Davis place a metal object, which he could not positively identify as a gun, but later learned was a gun, on the floorboard. Officer Lewis testified that at some point he searched the Buick and found a gun on the passenger-side floorboard. In one of his reports, he indicated both that he found the gun on the passenger-side

3

floorboard and on the driver-side floorboard. Officer Lewis acknowledged that this was an error and confirmed that he had recovered the gun on the passenger side.

Officer Rivera further testified that, after placing the metal object down, Mr. Davis got out of the car and tried to run away. Mr. Davis also struck Officer Rivera several times in the face and head, resulting in bumps and scratches. Officer Rivera visited his doctor a day or two after the incident to tend to these injuries.

After placing Mr. Finley and Defendant Davis in handcuffs, other Chicago police officers transported them to the 10th district police station. Officer Lewis and Officer Rivera interviewed Defendant Davis in an interview room at the police station for approximately ten minutes. During the interview, Officer Rivera had to leave the room for about two to three minutes because someone wanted to know if he needed his injuries tended to, but, he denied medical treatment at that time. Both officers testified that, before questioning Mr. Davis, Officer Rivera read Mr. Davis his *Miranda* rights from the Fraternal Order of Police Handbook, as was Officer Rivera's practice. Officer Rivera further explained that he read the rights from the Handbook in order to make sure he read them completely and thoroughly. In addition, he also testified that in December 2010 he spoke with an Assistant United States Attorney ("AUSA") and told her that he thought Officer Lewis read Mr. Davis his rights. He testified during the hearing that he was mistaken when he spoke with the AUSA. Both Officer Lewis and Officer Rivera testified that, after Mr. Davis heard his rights, he orally waived them. Officer Lewis further testified that Mr. Davis did not seem to have any difficulty understanding his rights. Mr. Davis never asked to stop speaking with the officers or to speak with a lawyer.

The police did not have a warrant to search Mr. Finley's car or to arrest Defendant Davis.

## LEGAL STANDARDS

**I.  Fourth Amendment**

"An arrest, of course, is the archetypical 'seizure' of a person under the Fourth Amendment." *Abbott v. Sangamon Cnty., Ill*., 705 F.3d 706, 719 (7th Cir. 2013). Specifically, a person is "seized" when a law enforcement officer terminates his freedom of movement by physical force or assertion of authority. *Id*. (citing *California v. Hodari D.,* 499 U.S. 621, 624, 111 S. Ct. 1547, 113 L. Ed.2d 690 (1991)). "A seizure rises to the level of an arrest when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Id*. (internal quotation omitted). "Probable cause to justify an arrest exists if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Abbott,* 705 F.3d at 714 (citing *Thayer v. Chiczewski,* 705 F.3d 237, 246 (7th Cir. 2012); *see also Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S. Ct. 2627, 61 L. Ed.2d 343 (1979); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L.E d.2d 142 (1964)). Determining whether an officer had probable cause to arrest is a purely objective inquiry. *Id*.

Additionally, a law enforcement officer may make an investigative stop of a person based on well-founded suspicions that the person has been, is, or is about to be engaged in criminal activity. *U.S. v. Smith*, 697 F.3d 625, 631 (7th Cir. 2012) (citing *U.S. v. Bullock,* 632 F.3d 1004, 1014–15 (7th Cir. 2011)). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 20 L. Ed.2d 889

(1968). "The prosecution bears the burden of proving by a preponderance of the evidence that a warrantless stop is supported by probable cause." *U.S. v. Garcia–Garcia*, 633 F.3d 608, 612 (7th Cir. 2011).

A defendant may seek to exclude evidence obtained in violation of the Constitution's protections. *See, e.g., U.S. v. Conrad*, 673 F.3d 728, 732 (7th Cir. 2012). "Indeed, unless one of various exceptions applies, exclusion will run not only to the unconstitutionally obtained evidence, but also to the fruits of that evidence—the so-called fruit of the poisonous tree." *Id.* (citing *Silverthorne Lumber Co. v. U.S.,* 251 U.S. 385, 392, 40 S. Ct. 182, 64 L. Ed. 319 (1920)).

## II. Fifth Amendment

The Fifth Amendment provides that "no person shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. To protect this privilege against self-incrimination, the Supreme Court held in *Miranda v. Arizona* that "a suspect must be informed of, and voluntarily waive" his Fifth Amendment rights, including the right to counsel and to remain silent, "being subjected to custodial interrogation." *U.S. v. Robinson*, 586 F.3d 540, 545 (7th Cir. 2009) (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)); *see also U.S. v. Pelletier,* 700 F.3d 1109, 1114 (7th Cir. 2012) ("*Miranda v. Arizona* requires police to read a series of warnings to suspects before putting them through custodial interrogation."). "[Q]uestioning must cease if the person indicates that he wishes to remain silent or desires an attorney's presence." *U.S. v. States*, 652 F.3d 734, 739 (7th Cir. 2011). Specifically, "all interrogation of the suspect must cease 'until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.'" *Robinson*, 586 F.3d at 545 (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1046, 103 S. Ct. 2830, 77 L. Ed. 2d 405 (1983)). "By itself, a suspect's initiation of conversation

does not necessarily constitute a waiver . . . ; the suspect's waiver must also be knowing and voluntary, under the totality of the circumstances, before law enforcement agents engage in any interrogation." *Id.* (citing *Edwards v. Arizona*, 451 U.S. 477, 486 n. 9, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981) (waiver depends on the "totality of the circumstances")).

A defendant does not need to expressly waive his *Miranda* rights. Rather, according to the Supreme Court, "courts can infer a waiver of *Miranda* rights 'from the actions and words of the person interrogated.'" *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2263, 176 L. Ed. 2d (2010) (quoting *N.C. v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 60 L. Ed. 2d 286 (1979)). Indeed, "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." *Butler*, 441 U.S. at 373; *see also U.S. v. Brown*, 664 F.3d 1115, 1118 (7th Cir. 2011) ("It is immaterial that defendant did not sign a waiver form or even utter a clear yes in response to the first recitation of Miranda.").

When a defendant claims that officers obtained a statement in violation of his *Miranda* rights, the government must prove voluntary waiver by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *see also U.S. v. Shabaz*, 579 F.3d 815, 817 (7th Cir. 2009) (affirming district court judgment that at suppression hearing government met its burden of showing by a preponderance of the evidence that the defendant had knowingly and voluntarily waived his *Miranda* rights before his confession).

## ANALYSIS

Defendant Davis argues that the officers lacked probable cause to stop Mr. Finley's car and thereby detain Defendant. (Mot. to Quash ¶ 6.) He further argues that his warrantless arrest

and the subsequent search of Mr. Finley's car constitute violations of the Fourth Amendment of the United States Constitution. (Mot. to Quash ¶ 7.) Defendant Davis, therefore, seeks to quash his arrest and suppress all physical evidence obtained from his arrest and search of the car, including the handgun. He also seeks to suppress the statements he allegedly gave to Officers Rivera and Lewis as fruit of the allegedly unlawful arrest, or, alternatively because the officers violated his Fifth Amendment rights by obtaining the statements without first informing Defendant Davis of his *Miranda* rights.

I. **Standing**

The government argues that Defendant Davis lacks standing to move to suppress the handgun seized during the search of the Buick because he did not have a reasonable expectation of privacy in the car. (R. 72, Resp. at 6-7.) During the hearing, Mr. Davis' attorney stated that, contrary to his written motion, he seeks to suppress the gun as (1) fruits of an illegal terry stop and (2) evidence obtained from an illegal search of Mr. Finley's car. Defendant Davis lacks standing to contest the latter, however, because he did not establish that he had an expectation of privacy in Mr. Finley's car, in which he was a mere passenger. *See, e.g., U.S. v. Neely*, 462 Fed. Appx. 632, 634 (7th Cir. 2012) ("We would not overturn the district court's conclusion that Neely lacked a protected Fourth Amendment interest in the shipping container because he presented no evidence that he had an objective or subjective expectation of privacy in the container."); *see also Rakas v. Ill.*, 439 U.S. 128, 148, 99 S. Ct. 421, 58 L. Ed.2d 387 (1978) (a passenger lacks Fourth Amendment "standing" to challenge the search of a car he does not own or lease); *U.S. v. Copeland*, 44 Fed. Appx. 740, 743 (7th Cir. 2002) (noting that, even though the government did not raise the argument, "[t]t also would seem that as a mere passenger

[defendant] lacks standing to challenge the search of the car") (citing *U.S. v. Price,* 54 F.3d 342, 345-46 (7th Cir. 1995)).

Mr. Davis does have standing, however, to contest the officer's stop of Mr. Finley's car, and consequential seizure of him as the passenger. *See Brendlin v. California*, 551 U.S. 249, 255-58 (2007) (finding that a passenger of a vehicle may challenge an illegal stop of a vehicle); *see also U.S. v. Bueno,* 703 F.3d 1053, 1059 n. 3 (7th Cir. 2013) ("Regardless of whether [defendant] had a possessory interest in the vehicle, he has standing to challenge the lawfulness of his detention.") (citing *U.S. v. Green*, 275 F.3d 694, 699 (8th Cir. 2001); *U.S. v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir. 2001) ("'[A]lthough a defendant may lack the requisite possessory or ownership interest in a vehicle to directly challenge a search of that vehicle, the defendant may nonetheless contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the [defendant's] illegal detention.'")). Because Mr. Davis has standing to contest the stop of Mr. Finley's car, in which he was a passenger, he can seek to exclude the gun as fruits of the allegedly illegal stop. *See U.S. v. Conrad*, 673 F.3d at 732 (stating that exclusion runs to so-called fruit of the poisonous tree created by a constitutional violation).

## II. The Terry Stop

Law enforcement officers are permitted to conduct an investigatory stop "if the brief detention is based on reasonable suspicion that the detained individual has committed or is about to commit a crime." *U.S. v. Uribe*, No. 11-3590, 2013 WL 514213, at *2 (7th Cir. Feb. 13, 2013); *see also U.S. v. Patton*, 705 F.3d 734, 737 (7th Cir. 2013) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968)). "Reasonable suspicion is a lower threshold than probable cause and does not deal with hard certainties, but with probabilities." *U.S. v. Booker*,

579 F.3d 835, 839 (7th Cir. 2009). It "requires more than a hunch but less than probable cause and considerably less than a preponderance of the evidence." *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010) (quotation omitted). "When determining whether an officer had reasonable suspicion, courts examine the totality of the circumstances known to the officer at the time of the stop, including the experience of the officer and the behavior and characteristics of the suspect." *U.S. v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006); *see also U.S. v. Odum*, 72 F.3d 1279, 1284 (7th Cir. 1995). Based on the totality of the circumstances known to Officers Rivera and Lewis before they stopped the Buick, namely the observations they made of both occupants not wearing their seatbelts, they had reasonable suspicion that Defendant Davis and Mr. Finley were engaging in unlawful conduct. *See, e.g., U.S. v. Martin,* 360 Fed. Appx. 686, 689 (7th Cir. 2010) (finding officer had probable cause to make traffic stop when he observed defendant not wearing a seatbelt in violation of Indiana law). Specifically, they appeared to be violating 625 ILCS 5/12-603.1.[1] Indeed, Officer Rivera testified that he observed that neither occupant had fastened his seatbelt both at the time that the Buick passed through the intersection and while driving behind the Buick on 16th Street before they curbed the Buick. Mr. Davis presented no evidence to contradict the officers' testimony that they observed Mr. Finley and Mr. Davis driving in the Buick without their seatbelts fastened.

Mr. Davis argues that the Court should not credit the testimony of the officers because discrepancies in the police reports undercut their credibility, and because the events which occurred after the stop indicate that the officers had an ulterior motive. First, the officers testified credibility and testified consistently with each other. Officer Lewis also credibly admitted, without justification, that he made errors when completing his reports after the

---

[1] Illinois law requires that "[e]ach driver and passenger of a motor vehicle operated on a street . . . shall wear a properly adjusted and fastened safety belt." 625 ILCS 5/12-603.1.

incident. These errors, however, relate to events that occurred after the stop itself, such as which side of the Buick Officer Rivera approached and on which side of the vehicle Officer Lewis recovered the gun. These errors do not undercut the consistent testimony which the officers gave at the hearing, particularly with regard to the stop. *See, e.g., U.S. v. Abernathy*, 258 Fed. Appx. 903, 906 (7th Cir. 2007) (upholding district court's reliance on an officer's testimony at motion to suppress hearing even though officer testified inconsistently with his reports on collateral issues when he admitted his errors and his testimony seemed credible); *U.S. v Turner*, 84 Fed. Appx. 670, 671-72 (7th Cir. 2003) (finding that inconsistencies in officers' testimony and with report of incident were minor or irrelevant to the ultimate determination that the stop was proper). Additionally, although Mr. Davis finds it troubling that the officers recorded the location of the incident on the citation as an address on 16th Street rather than the intersection where the officers first observed the traffic infraction or the address the officers curbed the Buick, this is of no consequence. The address is consistent with the Officers' testimony as it is an address between Keeler (where the officers first observed the Buick) and Tripp (where the officers curbed the Buick) along 16th Street (where the officers followed the Buick attempting to pull it over). Officer Rivera also testified that he made additional observations of the occupants, while tailing them on 16th Street, noting that they did not have their seatbelts fastened. This address, therefore, does not undercut the Officers' consistent testimony.

Second, even if the officers had an ulterior motive when they pulled over the Buick, "[t]he officer[s]' subjective motivations for stopping and detaining a suspect are not relevant to the reasonableness inquiry." *U.S v. Bullock,* 632 F.3d 1004, 1012 (7th Cir. 2011); *Uribe*, 2013 WL 514213 at *2. Indeed, the Court makes a purely objective inquiry when determining whether an officer had probable cause. *See Abbott,* 705 F.3d at 714. Although there was not

sufficient evidence to support Mr. Davis' theory that the officers pulled the Buick over in search of guns or drugs rather than based on their failure to wear seatbelts, such a motivation would not undermine the reasonableness and validity of the stop of the Buick.

### III. Alleged Fifth Amendment Violation

During the hearing, Officer Rivera and Officer Lewis both testified credibly that Officer Rivera read Mr. Davis his *Miranda* rights from his Fraternal Order of Police Handbook, and that Mr. Davis orally waived those rights. There was no evidence to the contrary. The Court credits their testimony, despite Mr. Rivera's previous statement to an AUSA that he believed Officer Lewis read Mr. Davis his rights. According to Officer Rivera, he and Officer Lewis make over three hundred arrests every year. He, therefore, had a temporary lapse in his memory, when speaking to the AUSA, regarding whether he or his partner read Mr. Davis his rights. He testified at the hearing credibly, however, and consistently with Officer Lewis. Moreover, at no point did he ever make a statement that Mr. Davis did not have an officer read him his rights.

Defendant Davis argues that even if Officer Rivera read Mr. Davis his "*Miranda* rights," he did not testify as to the specific rights which he read to Mr. Davis. Notably, in his motion Mr. Davis did not claim that the *Miranda* rights contained in the Fraternal Order of Police Handbook fail to sufficiently inform an arrestee of his rights or that the officers only partially or insufficiently informed him of his rights. Furthermore, there are no particular words which an officer must use when advising an arrestee of his *Miranda* rights. *See, e.g, Florida v. Powell,* 559 U.S. 50, 130 S. Ct. 1195, 175 L. Ed.2d 1009 (2010) (finding that there is no requirement that *Miranda* warnings constitute a precise formulation of particular language); *see also Dickerson v. U.S.*, 530 U.S. 428, 440 n. 6, 120 S. Ct. 2326, 147 L. Ed.2d 405 (2000) ("the Constitution does not require police to administer the particular *Miranda* warnings"); *Duckworth v. Eagan*, 492

12

U.S. 195, 202, 109 S. Ct. 2875, 106 L. Ed.2d 166 (1989) ("We have never insisted that *Miranda* warnings be given in the exact form described in that decision.").

Moreover, the fact that Mr. Rivera read Mr. Davis his rights, rather than recited them, supports a finding that the officers sufficiently and completely informed Mr. Davis of his rights. Indeed, Officer Rivera testified that the reason for reading the *Miranda* warnings from this Handbook was to ensure he did it completely and thoroughly. Additionally, the Court will take judicial notice of the fact that the Fraternal Order of Police Handbook contains a complete set of *Miranda* warnings because courts in this district, including this Court, have reviewed these warnings previously on multiple occasions and generally know the content of the Handbook, and the content of the Handbook can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned. *See* Fed. R. Evid. 201(b); *see also U.S. v. Arroyo, 3*10 Fed. Appx. 928, 929 (7th Cir. 2009) ("Judicial notice is a doctrine that authorizes the finder of fact to waive proof of facts that cannot reasonably be contested."); *see also LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 944 n. 3 (7th Cir. 2010) (taking notice of the contents of the Village's website which contained certain forms); *Sanata v. Cook Cnty. Bd. of Review*, 779 F. Supp.2d 830, 835 n. 3 (7th Cir. 2011) (taking judicial notice of the contents of transcript of board minutes); *Polnitz v. Peoria Cnty.*, No., 08-1035, 2009 WL 311157, at *2 (C.D. Ill. Feb. 4, 2009) (taking judicial notice of a grievance procedure contained in the Peoria County Jail Policies and Procedure Manual, which is a public record); *Driebel v. City of Milwaukee*, 298 F.3d 622, 631 n. 2 (7th Cir. 2002) (taking judicial notice of the Milwaukee Police Department Manual which "contains the rules and regulations duly promulgated by the chief of police, effective . . . upon approval by the Common Council of the City of Milwaukee and published for use in the normal course of business by the Milwaukee Police Department."). The Court may,

therefore, infer that Officer Rivera sufficiently advised Mr. Davis of his rights by reciting them from the Handbook.

Finally, Defendant Davis's oral waiver of his rights was sufficient. As noted by Mr. Davis in his motion, the officers did not tape-record or videotape his statements. They also did not ask him to sign a written summary of his statement or a written waiver of his rights. Indeed, the officers testified that Mr. Davis orally waived his rights. The Constitution, however, does not require law enforcement officers to electronically record post-arrest interrogations or to have an arrestee sign a written waiver. *See, e.g., U.S. v. Montgomery*, 390 F.3d 1013, 1017 (7th Cir. 2004) (refusing to extend *Miranda* as requiring officers to record all interrogations); *see also Butler*, 441 U.S. at 373; *Brown*, 554 F.3d at 1118; *U.S. v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002). Indeed, the Court can infer a waiver of *Miranda* from Defendant Davis' words and actions. *Thompkins*, 130 S. Ct at 2263. Here, the Court credits the uncontested testimony of Officers Rivera and Lewis that Officer Lewis read Mr. Davis his rights, and Mr. Davis volunatarily, orally waived them.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Davis' motions to quash and to suppress.

**DATED: April 15, 2013**

                                              **ENTERED**

                                          **AMY J. ST. EVE**
                                          **United States District Court Judge**